IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES G. REECE, | No. 2:09-CV-1350-GEB-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| TERRY DICKENSON, | |
| Defendant. | |
| _____/ | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendant's motion for summary judgment (Doc. 50).

### I. BACKGROUND

**A.   Plaintiff's Allegations**

This action proceeds on plaintiff's third amended complaint against the sole remaining defendant, Dickenson, on a claim of violation of plaintiff's First Amendment right of access to the courts. All other claims and defendants have been dismissed. The basis of plaintiff's claim is that defendant Dickenson failed to properly process his inmate grievance, thus

1

foreclosing on his ability to challenge his prison disciplinary proceedings in state court through a petition for writ of habeas corpus. He alleges that after his inmate grievance was improperly screened out and dismissed, the state court denied his habeas petition on the grounds that it was not exhausted.

### B. The Parties' Evidence

According to defendant's evidence, which consists of defendant's declaration and attached exhibits, as well as plaintiff's discovery responses and documents defendant asks the court to judicially notice, the following facts are undisputed:[1]

1. In 2005 defendant Dickenson held the position of Appeals Coordinator at California State Prison – Solano ("CSP-Solano").

2. Under the inmate grievance system in place at CSP-Solano in 2005, an inmate could file an appeal regarding any decision, action, or condition that the inmate could demonstrate had an adverse effect on his welfare.

3. The regulations required that any appeal had to be filed within 15 working days of the event or decision being challenged.

4. One of defendant Dickenson's responsibilities was to screen inmate appeals to determine whether they complied with applicable regulations.

5. In addition to the 15-day time rule, the regulations also required that inmate appeals contain necessary supporting documentation, which is the inmate's responsibility to provide.

6. The CSP-Solano inmate appeals office received an appeal from plaintiff on February 25, 2005.

7. In the inmate appeal, plaintiff complained of a rules violation that had been issued against him and requested that the rules violation be reversed and removed from his central file.

8. The hearing on the rules violation occurred on February 6, 2005, and the report following that hearing was prepared the same day.

---

[1] The court may take judicial notice pursuant to Federal Rule of Evidence 201 of matters of public record. See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008). Thus, this court may take judicial notice of state court records, see Kasey v. Molybdenum Corp. of America, 336 F.2d 560, 563 (9th Cir. 1964), as well as its own records, see Chandler v. U.S., 378 F.2d 906, 909 (9th Cir. 1967). Here, defendant asks the court to take judicial notice of the state court's decisions in plaintiff's habeas cases. This request should be granted.

9. Defendant Dickenson screened plaintiff's inmate appeal out on March 2, 2005, concluding that plaintiff had failed to attach necessary supporting documentation.

10. Defendant Dickenson instructed plaintiff to re-submit his appeal, which he did.

11. The re-submitted appeal was again screened out by defendant Dickenson, this time because it still did not contain all the required supporting documentation, specifically a legible copy of a form CDC-115-A accompanying the rules violation.

12. Plaintiff re-submitted his appeal once again, but it was again screened out on March 18, 2005, by defendant Dickenson because plaintiff failed to include a legible copy of the form CDC-115-A.

13. With his third submission of his appeal, plaintiff included a letter to defendant Dickenson stating:

> I am not going to do your job for you. It's your job to process the 602 [inmate appeal] not to harass me about copies I do not have. I don't have access to the original CDC-115 and I am not about to waste my time trying to do your job in obtaining the so-called copy that won't show up on any copy from the original because the mark was so faint on the original that it could barely be seen. It's your job to get the original CDC-115 and check it for whatever you want not mine.

14. Defendant Dickenson once again instructed plaintiff to re-submit the appeal with a legible copy of the form CDC-115-1A.

15. On March 29, 2005, defendant Dickeson screened out plaintiff's fourth submission, again for failure to include a legible copy of the CDC-115-A form.

16. On July 7, 2005, the appeals office received another re-submitted inmate appeal from plaintiff, this time containing the required forms.

17. This appeal was also screened out by defendant Dickenson, this time for failure to comply with time limits.

18. According to plaintiff's answers to interrogatories, he is not claiming that the state court denied his habeas petition for failure to exhaust because he was unable to proceed with his inmate appeal.

19. According to state court records, the state court denied two habeas petitions filed by plaintiff, both because the evidence did not support his claims on the merits and neither for lack of exhaustion.

3

## II. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

1  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
2  of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
3  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and
4  that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict
5  for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

6        In the endeavor to establish the existence of a factual dispute, the opposing party
7  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
8  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
9  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
10 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
11 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
12 committee's note on 1963 amendments).

13       In resolving the summary judgment motion, the court examines the pleadings,
14 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
15 any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See
16 Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed
17 before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
18 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
19 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
20 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
21 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
22 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
23 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
24 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).
25 / / /
26 / / /

### III.  DISCUSSION

Defendant Dickenson argues that plaintiff's inmate grievance was properly screened and, in any event, the state court did not deny habeas relief due to any failure to exhaust.

Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process).  Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances.   Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983).

Prisoners have a First Amendment right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures).  This right includes petitioning the government through the prison grievance process. See id.  Prison officials are required to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828.  The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis, 518 U.S. at 356-57.  Moreover, the right is limited to

6

non-frivolous criminal appeals, habeas corpus actions, and § 1983 suits. See id. at 353 n.3 & 354-55.  Therefore, the right of access to the courts is only a right to present these kinds of claims to the court, and not a right to discover claims or to litigate them effectively once filed. See id. at 354-55.

As a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007). Delays in providing legal materials or assistance which result in prejudice are "not of constitutional significance" if the delay is reasonably related to legitimate penological purposes. Lewis, 518 U.S. at 362.

In this case, the undisputed evidence establishes that plaintiff did not suffer any actual injury.  Specifically, even if defendant Dickenson's handling of plaintiff's inmate appeals was somehow improper, his state court habeas petitions were not denied as a result of any mishandling of his appeals.  Rather, as the state court records reflect, plaintiff's two habeas petitions were denied on the merits.  In short, none of defendant Dickenson's conduct in any way prejudiced plaintiff's habeas cases.

According to plaintiff, the state court's merits decisions flowed directly from his inability to file a grievance concerning the rules violation.  Plaintiff states that his state habeas petitions – which challenged the denial of parole – were both denied because his prison record contained the rules violation report.  Plaintiff reasons that, had his inmate appeal been processed, he could have been successful in having the rules violation expunged which, in turn, would have resulted in his being granted parole.

The logic of plaintiff's argument rests on the assumption that the existence of the 2005 rules violation was the only basis for the denial of parole and that, had he been successful in having the 2005 rules violation expunged, he would have been released on parole.  The record

does not support this assumption.  A review of the state court's decision reflects that the state court found that the denial of parole was supported by numerous reasons, not just the existence of the 2005 rules violation.  Specifically, the court cited: (1) plaintiff's commitment offense; (2) plaintiff's criminal history; (3) plaintiff's lack of participation in self-help programming; and (4) plaintiff's 2004 psychological evaluation.  On this record, even had the 2005 rules violation been expunged, ample other reasons existed supporting the state court's decision.  Thus, plaintiff cannot, as a matter of law, establish that defendant Dickenson's conduct resulted in denial of his habeas petition.  Furthermore, plaintiff only speculates that, had he been able to perfect the 2005 inmate appeal, it would have yielded the result he wanted – expungement of the rules violation report.  Once again, plaintiff cannot prove prejudice.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that defendant's motion for summary judgment (Doc. 50) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 13, 2013

_____
CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE